Mr. Chief Justice Sharkey
delivered the opinion of the court.
The complainants instituted this suit in the superior court of chancery, to coerce the payment of a promissory note, made by defendants. The note was made payable to the President, Directors and Company of the Planters’ Bank, and transferred to complainants, without indorsement, in 1841; They are therefore the holders of a note which was not negotiable on its face, as it was not payable to order or bearer, but it is made so by statute.
. After the assignment, but before suit brought, the charter of the bank was judicially declared forfeited, and the corporation became extinct. The bill was demurred to on the ground of a want of jurisdiction. If there is a remedy at law, or if there is no remedy at all, then the demurrer was properly sustained.
The question raised has excited great interest, not because of the amount involved in this case, but because many other cases of the same kind are pending, and this must decide them.
The complainants’ right to maintain the suit, depends on three questions; the first is, how is suit to be brought on a promissory note transferred by delivery merely ? Has the holder such an interest as to enable him to sue at law in his own name, or has he but a beneficial or equitable interest, which must be asserted in the name of the payee for the use of the holder ?
"We start out with a proposition which we siippose will not be denied, that a party who sues upon a note stands upon the same ground that every other plaintiff does in a court of law; he must show a legal title to enable him to maintain his action. Courts of law will not permit mere equities to be made the foundation of an action. If the plaintiff must have a legal title, how may it be acquired, or what constitutes such title? Is it acquired by any contract evincing a determination on the part of the holder to pass the interest to another, or has such an instrument, like most other things, a law peculiar to itself? *520 This is an important question in the investigation. We know that all legal rights will be enforced in a court of law; but what constitutes a legal right is a question which adrqits of a different answer as regards different things. The legal right to an incorporeal hereditament passes only by grant. The legal right to a freehold at common law passed only by livery of seisin. Such a right now passes by deed sealed and delivered, and if it be not sealed the purchaser takes but an equity. The legal right to personal property passes by delivery, without written con-ract. In each instance we find a different mode of changing ownership, which constitutes part of the law of the particular property, and a legal title is not to be acquired but an observance of the ceremonies required by law. Any thing short of a legal transfer, invests the purchaser with nothing more than an equity. Other rights are personal merely, and incapable of being transferred from one to another at the common law. Of this description were choses in action, promissory notes included. We need not inquire why this was so; it is sufficient to know that such were 'the rules of law. As notes were not transferable by the common law, that character has been given them by statute, and if that statute points out the mode of assignment, and does not expressly authorize an assignment by some other method, it must be followed, just as any other statute must be followed, which points out the mode of transferring property, real or personal. It was giving to them a property or quality which they did not before possess, and nothing more can be claimed for them than was given. Their character of negotiability is derived from 3 and 4 Aune, which after a long recital as to the doubts that had existed, and the importance of placing notés on a footing with bills of exchange, proceeds to declare that notes “shall be assignable or indorsable over, in the same manner as inland bills of exchange are or may be according to the custom of merchants;” 'and it also declares, that the person to whom the same is indorsed may maintain an action “ in like manner as in cases of inland bills of exchange.” The statute does not give the particular mode of transfer, but adopts that which governed in the transfer of bills of exchange; and it follows, therefore, *521 that just as bills of exchange were transferable, so were promissory notes. They were placed on the same footing precisely. Bills of exchange in their origin seem to have constituted an exception to the general rule, that a chose in action was not assignable; they were always so. It is to that qualify that their utility in commercial matters is chiefly owing. In this they were subject to a law peculiar to themselves. But they are not assignable unless made payable to order or bearer. By making a bill so it became transferable by the very terms of the contract, which thus, showed an intention to make it for mercantile purposes, and to subject it to the custom of merchants. In the absence of words of negotiability it could not be assigned or transferred in any way so as to give the holder a right to sue the maker or acceptor in his own name. They had their origin in the custom of merchants, which also governed in their negotiation. By that law they were transferable by indorsement, and by indorsement only. That is the mode of transferring the legal title prescribed by the custom of merchants, and if it be not followed, the holder has not the legal title. Chitty says a bill payable to the order of a certain person, or to that person or order, or assigns, or to the drawer’s order, is transferable in the first instance by indorsement only. Chitty on Bills, (ed. of 1821) 170.
The reasoning of Chief Justice Eyre, in Gibson v. Minet, 1 H. Black. Rep. 569, is very conclusive on this subject. He says, “I presume it must be admitted to me, that a plaintiff who sues upon a bill of exchange must show a title to sue upon it, in the same manner as every other plaintiff must show a sufficient title to enable him to maintain the action which he brings. Bills of exchange being of several kinds, the title to sue upon any one bill of exchange in particular, will depend upon what kind of bill it is, and whether the holder claims title to it as the original payee, or as deriving, from the original payee, or from the drawer in the case of a bill payable to the drawer’s own order, who is in the nature of an original payee. The title of the original payee is immediate. The derivative title is a title by assignment, a title which the common law does not acknowl *522 edge, but which exists only by the custom of merchants. As it is by the force of the custom of merchants that a bill is assignable at all, of necessity the custom must direct how it shall be assigned: and in respect to bills payable to order, the custom has directed that the assignment should be made by a writing on the bill, called an indorsement, appointing the contents of that bill to be paid to some third person; and in respect of bills payable to bearer, that the assignment should be constituted by delivery only.” This seems to be a full explanation of the whole question we are considering, and Judge Story is equally clear. He says, “If a bill is negotiable, the manner of transfer depends upon the manner in which the bill is made payable. If it is payable to bearer, then it is transferable by delivery. If the bill is originally made payable to a person or his order, then it is properly transferable by indorsement. We say properly transferable, because in no other way will the transfer convey the legal title to the holder, so that he can at law hold the other party liable to him ex directo, whatever may be his remedy in equity.” Story on Bills of Exchange, § 200, 201. He uses the same language in regard to notes, and adds, “If there be an assignment thereof without an indorsement, the holder will thereby acquire the same rights only as he would acquire upon an assignment of a note not negotiable.” Story on Notes, § 120. If the instrument is not negotiable, the indorsement passes but the equity, or beneficial interest, which authorizes the holder to sue in the name of the original payee. Story on Notes, 120, note 1. In Hopkirk v. Page, 2 Brokenbrough, 20, the same principle is settled.
We see then that bills of exchange must be transferred, if payable to order, by indorsement, and, of necessity, notes also. If they are payable to bearer, then they may be transferred by delivéry, or by indorsement. But if they are not negotiable, that is, not payable1 to order or bearer, then even an indorsement passes but an equity. If they are negotiable, a transfer without indorsement does the same thing, that is, it passes the equity only. An indorsement is made by writing the name of the payee on the note or bill, hither upon the back or upon the face, or. *523 when there is not room, upon a separate piece of paper attached to it. Bouvier, Law Diet., tit. Bill of Exchange; Story on Notes, 121. This is the meaning of the word indorsement, according to the custom of merchants. As it is an instrument made to negotiate, it must bear upon it the evidences of its negotiation, or regular transfer.
But it has been contended, that our statute makes a change in this particular, by using the word in a more enlarged sense. The word “ indorsement” has but one meaning when used with reference to notes or bills, and we cannot say that it was intended to be used in a more extended sense. The statute declares that notes “ shall and may be assigned by indorsement, whether the same be payable to the order or assigns of the obligee or payee or notand it also provides, that the assignee or indorsee may sue in his own name, and maintain any action which the payee could have maintained previous to assignment. H. &. H. Dig. 373, sec. 12. That is, he may sue in his own name when the note has been assigned to him. If we bear in mind the law as it stood before the statute, we see the change that was intended by it, and there is no difficulty in arriving at its meaning. It merely makes notes negotiable that were not so by the custom of merchants, and places the indorser of such a note where he would have stood by the custom of merchants, as the indorser of a negotiable note. The custom of merchants declared that a note not payable to order or bearer was not negotiable, and the legal title would not pass by indorsement. The statute declares that such notes shall be negotiable, and the legal title shall pass by indorsement. It in effect puts in every note the words “or order.” But it does not change the mode of transfer. It says they may be assigned by “indorsement;” not by any different mode. It makes them assignable in that particular mode, but beyond that it does not go. In this it differs from the Virginia statute, which does not use the word indorsement, and therefore the decisions of that state cannot be applicable. Having, shown then, that by the custom of merchants the complainants did not acquire such a legal title to this note as to authorize them to sue at law in their own names, and also *524 that the statute conferred no such authority, there was no ground for the demurrer on that score.
The next question is, was there any other person in being in whose name they could have sued for their use % The corporation to whom the note was payable was dissolved before suit brought. It is contended, that the suit should have been brought by the trustees appointed under the act of 1843, on the ground that they are the legal representatives of the bank. Their duty is prescribed to be to take charge of the books, to collect all debts due to the bank, to sell property belonging to it, and the proceeds were to be applied in discharge of the debts of the bank. They were appointed for a particular purpose, and authorized to collect only such debts as belonged to the bank. They were not so far the legal representatives of the bank as to authorize suits to be brought in their name, for any other than the purposes expressed in the act. But the case of the Grand Gulf Bank v. The State, 10 S. & M. 428, fully settles this question. It was there held, that trustees under the act of 1843 had no rights whatever as to debts or notes assigned before the forfeiture of the charter. The trustees then held by general assignment, which is no better than the assignment by delivery in this case. In the case of Nevitt v. The Bank of Port Gibson, 6 S. & M. 513, it was objected that the trustees, under the act of 1843, could not sue at all, even for the debts really due the bank ; we decided that they could, and now it is contended that they are, to all intents and purposes, substituted in place of the bank, and clothed with every naked legal title that was in the bank. They possess no power, however, except when the bank has a beneficial interest. In the case of the Commercial Bank of Natchez v. Chambers, 8 S. &. M. 13, it was said, that the trustees _ appointed under the act do not differ materially from a trustee appointed by contract. If this be so, it must settle this question. A trustee by contract has no interest beyond the trust fund; he represents nothing else. The legal title he has to that extent, but beyond that there is no title in him. He cannot sue for any thing not embraced in the deed of trust. He differs from an administrator in this; the administrator is the general represen *525 tative of the deceased; a trustee has no power or rights beyond those expressly conferred as to the particular fund or duty entrusted to his management. Mere legal titles other than those which appertain to the trust property, do not devolve upon him. In short, he has no connection with any thing but the trust fund, nor does he owe any duty beyond mat. It is the duty of the f payee of a note to permit the holder to sue in his name; but/ such duty does not extend to a trustee. But it seems to be taken for granted, rather than established, that when the payee has died, the suit on anote not indorsed must be brought exclusively in the name of his executor or administrator, for the use of the holder. We need not controvert this position; it is not necessary. We do not think that there was a remedy at law in this instance by suit in the name of the trustees for the use of the holde»of the note.
In the last place we are to inquire, whether there is a remed^ in a court of chancery. It would seem to follow, that if there be no remedy at law, there must be one in equity. But it has been argued, that if there be no remedy at law, the right must be extinguished, as an equity must have a legal right to support it, and the destruction of the principal is the destruction of the incident. This argument is not well founded in its application to mere rights or intangible things, such as choses in action. Such rights are often equitable merely. Even the payee of a lost note not negotiable, had not, according to the English decisions, a remedy at law; his remedy was exclusively in equity. Such a case would seem to present the case of an equity without a legal right to support it. It is not to be admitted that an equity is but an incident to a legal right. ^
On this branch of the subject we may advert to a principle already stated. The transfer of a nqte by mere delivery, which is not payable to bearer, vests an equity or the beneficial interest in the holder. If by any casualty he should be deprived of his remedy at law, the nature of his right entitles him to redress in a court of equity. His equity is not destroyed because the payee may happen to die. / His is precisely such a right as a *526 court of equity may take cognizance of, because he has taken but an imperfect conveyance of the thing transferred. In the case of Lenox v. Roberts, 2 Wheat. 373, the plaintiffs filed their bill in chancery on certain promissory notes made by one Janey, and indorsed by defendantThe plaintiffs derived title through a deed of assignment made by the Bank of the United States of its bills, notes, &c., and it was decided by Chief Justice Marshall, that the suit could be maintained in chancery. The deed of assignment in that instance, like the delivery in this, was an imperfect conveyance, and as the act of incorporation had expired, no suit at law could be brought in the name of the bank for the use of the holder. This case is directly to the point, and settles this question, if indeed an adjudication should be necessary to settle a point so clear on principle. The corporation in this instance transferred an equitable right to the note by delivery, and before that right was enforced at law the corporation ceased to exist; but this did not destroy the complainant’s right, and a court of chancery is the proper and only court in which it can be asserted.
A case decided a few days ago calls for some remark, as it held a doctrine different from that which is here asserted. The holder of a note claimed under a general assignment from the Grand Gulf Bank of all its notes, bills, &c., made before its charter was forfeited, and it was said that he held the legal as well as the equitable right, by virtue of that assignment. It was so held mainly on my own suggestion. Without much reflection, it occurred to me that the legal title passed by assignment, and that the indorsement was but evidence of the contract, and that the assignment, as a matter of evidence, was as good as an indorsement. But the investigation which has been called forth by this case has satisfied me that I was wrong in the case alluded to, and we shall accordingly change that opinion, so as to make it correspond with the views here taken.
Decree reversed and cause remanded.